T.C. Summary Opinion 2021-34

UNITED STATES TAX COURT

MARIA ISABEL GOODE, Petitioner, AND JAMES T. GOODE, JR., Intervenor
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14832-18S.                    Filed September 23, 2021.

Maria Isabel Goode, pro se.

James T. Goode, Jr., pro se.

<u>Brooke N. Stan</u> and <u>Sheila R. Pattison</u>, for respondent.

SUMMARY OPINION

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]  Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner seeks review under section 6015(e)(1) of respondent's determination that she is not entitled to relief from joint and several liability with respect to a joint Federal income tax return that she filed with her former spouse, intervenor, for taxable year 2010. The issue for decision is whether petitioner qualifies for relief from her 2010 Federal income tax liability under section 6015(f).

## Background

Petitioner, intervenor, and respondent stipulated some of the facts in this case, and those facts are so found. The stipulation of facts, supplemental stipulation of facts, and accompanying exhibits are incorporated herein by this reference. Petitioner resided in Texas when she filed her petition.

Petitioner and intervenor married in 2000 and have two children who were 19 and 13 at the time of trial. Between 1990 and 2010 petitioner worked as an engineer for the Department of Defense (DOD), first in New Mexico and then in Arizona. Intervenor also worked for the DOD during some of those years

Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

including 2010. Petitioner and intervenor filed a joint tax return for every year between 2000 and 2010.

In 2006 intervenor applied for and received a loan from his Thrift Savings Plan (TSP), a retirement plan for Federal Government employees. See sec. 7701(j); Ryan v. Commissioner, T.C. Memo. 2011-139, 2011 Tax Ct. Memo LEXIS 138, at *15, aff'd, 482 F. App'x 881 (5th Cir. 2012). Petitioner consented to the loan by signing the loan agreement, which required intervenor to make 130 payments over five years.

In 2010 intervenor became ill, prompting him and petitioner to resign from their DOD jobs in Arizona and move to Florida to be closer to intervenor's family. Before resigning from her job that year, petitioner applied for and received a loan from her TSP. Intervenor also borrowed an additional amount from his TSP, and petitioner consented to this loan. Petitioner and intervenor used the loan proceeds to cover their living expenses while they looked for new jobs in Florida.

Unfortunately, petitioner and intervenor were unable to find work that paid salaries commensurate with the jobs they had left in Arizona. Financial difficulties followed, causing petitioner and intervenor to default on their TSP loans. As a result, TSP issued petitioner Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.,

reporting a deemed distribution of $90,359 and Federal income tax withholding of $5,760. TSP also issued intervenor a Form 1099-R reporting a deemed distribution of $56,691 and Federal income tax withholding of $5,000.

Petitioner and intervenor timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2010. On the return they reported, among other things, the above-described deemed distributions. They reported total tax of $63,858 and total payments of $27,966, leaving them with a tax liability of $35,892, which they did not remit with their return. Petitioner and respondent agree that 78.5% of the liability is attributable to petitioner and that 21.5% is attributable to intervenor.

Shirley Douglas, intervenor's mother, prepared the 2010 return. Petitioner provided documents to Ms. Douglas and signed the return after it was prepared. Petitioner knew at that time that there was a balance due that she and intervenor were unable to pay.

In August 2011 petitioner separated from intervenor and moved with her two children to El Paso, Texas. From August 2011 through 2014 petitioner had no contact with intervenor. She was unable to return to Federal service during that time and worked several low-paying jobs.

In 2015 intervenor moved to El Paso and briefly reconciled with petitioner. At that time they established a payment plan with respondent that required monthly

payments of $140 for the first year and $590 thereafter. Petitioner was the sole source of the monthly payments made under the plan. Respondent also applied overpayments for 2011, 2012, 2013, 2014, 2015, and 2016 against the joint tax liability for 2010.[2]

Petitioner returned to Federal service in February 2016. Two months later she and intervenor separated. On April 28, 2017, the District Court of El Paso County, Texas, issued petitioner and intervenor a Final Decree of Divorce (Final Decree). The Final Decree included an order that petitioner and intervenor were each liable for one-half of the "Debt owed to the Internal Revenue Service" for 2010.

In 2017 petitioner stopped making installment payments to respondent. On June 13, 2017, petitioner filed Form 8857, Request for Innocent Spouse Relief. Thereon petitioner reported monthly income of $8,363 and monthly expenses of $8,257. However, in an attachment to her Form 8857, petitioner disclosed that her gross annual income was $104,896, which would give her a gross monthly income of $8,741.

---

[2] The record includes an account transcript for 2010 reflecting a balance of $9,629 at the time of trial.

Petitioner also checked a box on the Form 8857 indicating that she was a victim of spousal abuse or domestic violence. In an attached statement, petitioner alleged that intervenor had become abusive after developing a drinking problem in 2010. She further alleged that intervenor had pulled her hair and shoved her son during an altercation in 2015, prompting her to file for a protective order. Petitioner attached a copy of the protective order to her Form 8857.

On May 2, 2018, respondent issued petitioner a final notice of determination denying her request for innocent spouse relief. Petitioner timely filed a petition with this Court seeking review of respondent's determination. Pursuant to section 6015(e)(4) and Rule 325, intervenor subsequently became a party to this case, opposing relief. Trial was held in El Paso, Texas.

Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under

procedures set forth in section 6015.  Section 6015 provides a spouse with three alternatives:  (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

Petitioner does not contend that she is entitled to relief under section 6015(b) or (c).  Furthermore, subsections (b) and (c) do not apply where, as here, the liability stems from an underpayment reported on a joint return.  See sec. 6015(b)(1)(B), (c)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v. Commissioner, 120 T.C. 62, 66 (2003); Leith v. Commissioner, T.C. Memo. 2020-149, at *18.  We therefore address whether petitioner is entitled to relief under section 6015(f).

I.    Standard and Scope of Review

In determining whether a taxpayer is entitled to equitable relief under section 6015(f), we apply a de novo standard and scope of review.[3]  Porter v. Commissioner, 132 T.C. 203, 210 (2009).  Petitioner generally bears the burden of proving that she is entitled to equitable relief under section 6015(f).  See id.; see also Rule 142(a)(1).

---

[3]  Because petitioner filed her petition before July 1, 2019, sec. 6015(e)(7) does not apply to this case.  See Sutherland v. Commissioner, 155 T.C. 95, 104 (2020).

II.     Section 6015(f) Relief

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability.  Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403.  Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Rogers v. Commissioner, T.C. Memo. 2018-53, at *112.  The Court's determination ultimately rests on an evaluation of all the facts and circumstances.  Porter v. Commissioner, 132 T.C. at 210.

Pursuant to the revenue procedure, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f).  See Rev. Proc. 2013-34, sec. 4.  The requirements for relief under the revenue procedure are categorized as threshold or mandatory requirements, streamlined elements, and equitable factors.  A requesting spouse must satisfy each threshold requirement to be considered for relief.  See id. sec. 4.01, 2013-43 I.R.B. at 399-400.  If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse meets each streamlined element.  See id. sec. 4.02, 2013-43 I.R.B. at 400.

Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors. See id. sec. 4.03, 2013-43 I.R.B. at 400-403.

A.    Threshold Requirements

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34, sec. 4.01. Those requirements are: (1) the requesting spouse filed a joint return for the taxable year for which relief is sought, (2) relief is not available to the requesting spouse under section 6015(b) or (c), (3) the claim for relief is timely filed, (4) no assets were transferred between the spouses as part of a fraudulent scheme, (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse, (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return, and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Id.

Petitioner concedes that, if she is entitled to any relief, it is limited to 21.5% of the underpayment--i.e., the amount attributable to intervenor. With respect to that portion of the liability, respondent concedes that petitioner has met the

threshold requirements for relief. Intervenor has provided no credible evidence to the contrary.

B.     Streamlined Determination

For the portion of the 2010 liability for which petitioner is eligible for relief under section 6015(f), Rev. Proc. 2013-34, sec. 4.02, sets forth circumstances under which the Commissioner will make a streamlined determination granting equitable relief to the requesting spouse. The requesting spouse is eligible for a streamlined determination by the Commissioner only in cases in which the requesting spouse establishes that she (1) is no longer married to the nonrequesting spouse, (2) would suffer economic hardship if not granted relief (economic hardship requirement), and (3) did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return, or did not know or have reason to know that there was an understatement or deficiency on the joint income tax return. Id. The requesting spouse must establish that she satisfies each of the three elements to receive a streamlined determination granting relief. Id.

We first address the economic hardship requirement. Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet her reasonable basic living expenses.

Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401. The requesting spouse would suffer economic hardship if two tests are met: (1) either (a) the requesting spouse's income is below 250% of the Federal poverty level or (b) the requesting spouse's monthly income exceeds her reasonable basic monthly living expenses by $300 or less, and (2) the requesting spouse does not have assets from which she can make payments toward the tax liability and still meet reasonable basic living expenses. Id. If these tests are not satisfied, the Commissioner will consider all facts and circumstances in determining whether the requesting spouse would suffer economic hardship if relief was not granted. Id.

Petitioner does not contend that her monthly income is below 250% of the Federal poverty level, and her reported monthly income of $8,741 exceeds her reported monthly expenses of $8,257 by more than $300. At trial she offered no evidence that she would suffer economic hardship if relief was not granted. We therefore conclude that petitioner does not satisfy the economic hardship requirement and that she is not entitled to a streamlined determination under Rev. Proc. 2013-34, sec. 4.02. Because petitioner does not meet the economic hardship requirement, the Court need not consider whether she meets the other two requirements for a streamlined determination.

C.    Rev. Proc. 2013-34:  Equitable Factors

If a requesting spouse is not entitled to a streamlined determination because the requesting spouse does not satisfy all the elements in Rev. Proc. 2013-34, sec. 4.02, the requesting spouse's request for relief may be considered using the equitable relief factors in Rev. Proc. 2013-34, sec. 4.03.

Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, lists the following seven nonexclusive factors to be considered in determining whether, taking into account all the facts and circumstances, equitable relief under section 6015(f) should be granted:  (1) the current marital status of the spouses, (2) whether the requesting spouse will suffer any economic hardship if relief is not granted, (3) whether the requesting spouse knew or had reason to know of the item giving rise to the underpayment, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefited from the underpayment, (6) whether the requesting spouse has made a good faith effort to comply with income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health when the return in issue was filed, when the request for relief was made, or at the time of trial.  See Pullins v. Commissioner, 136 T.C. at 448.

In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant factors. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, sec. 4.03(2); see Pullins v. Commissioner, 136 T.C. at 448; Hall v. Commissioner, T.C. Memo. 2014-171, at *38.

### 1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of granting relief. See Rev. Proc. 2013-34, sec. 4.03(2)(a), 2013-43 I.R.B. at 400. If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. Id. Petitioner and intervenor divorced in 2017. This factor weighs in favor of relief.

### 2. Economic Hardship

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet her reasonable basic living expenses. Id. sec. 4.03(2)(b). If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor will be neutral. Id. For the reasons set forth above we find that petitioner would not face economic hardship if she was denied relief. This factor is neutral.

### 3. Knowledge

In an underpayment case relief is favored if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Id. sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. This factor will weigh against relief if, on the basis of the facts and circumstances, it was not reasonable for the requesting spouse to believe the nonrequesting spouse would or could pay the tax liability reported on the return. Id.

Notwithstanding the requesting spouse's knowledge or beliefs, that knowledge may be negated if the nonrequesting spouse abused the requesting spouse or maintained control of the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging payment of the liability. Id. sec. 4.02(3)(a), 4.03(2)(c)(ii). "Abuse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws." Id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402; see, e.g., Stephenson v. Commissioner, T.C. Memo. 2011-16. This Court takes all facts and circumstances into account in determining

the presence of abuse, <u>see</u> Rev. Proc. 2013-34, sec. 4.01, and requires substantiation, or at a minimum, specificity, with regard to allegations of abuse, <u>see</u> <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135, 2008 Tax Ct. Memo LEXIS 139, at *29.  A generalized claim of abuse is insufficient.  <u>See</u> <u>Thomassen v. Commissioner</u>, T.C. Memo. 2011-88, <u>aff'd</u>, 564 F. App'x 885 (9th Cir. 2014); <u>Knorr v. Commissioner</u>, T.C. Memo. 2004-212.

Petitioner consented to intervenor's TSP loans when she signed the loan paperwork as intervenor's spouse.  The liability attributable to intervenor arose partially from the default on those loans.  At trial petitioner acknowledged that she was aware of her and intervenor's inability to pay their tax liability for 2010 when she signed the joint return.

On her Form 8857 petitioner alleged that she was a victim of abuse.  However, petitioner did not testify about her allegations at trial or explain why she was unable to question or challenge payment of the 2010 tax liability.  Although the record includes a copy of a 2016 protective order against intervenor, that document was issued many years after the year for which petitioner seeks relief.  While the Court takes allegations of abuse seriously, the record does not support a finding that intervenor's abuse prevented petitioner from questioning or

challenging payment of the 2010 tax liability. We therefore conclude that petitioner's knowledge of the underpayment weighs against relief.

### 4. Legal Obligation

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding Federal tax liability under a binding divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral where both spouses have such an obligation or the divorce decree or agreement is silent as to any such obligation. Id. The Final Decree allocated one-half of the underpayment of tax to each of petitioner and intervenor. Because both spouses have a legal obligation pursuant to a divorce decree, this factor is neutral.

### 5. Significant Benefit

This factor calls for an evaluation of whether petitioner received a significant benefit, beyond normal support, such as the "benefits of a lavish lifestyle," from the underpayment of tax. See id. sec. 4.03(2)(e), 2013-43 I.R.B. at 402; see also sec. 1.6015-2(d), Income Tax Regs. If so, this factor will weigh against relief. Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. If the unpaid tax is small such that neither spouse received a significant benefit from its nonpayment, then this factor is neutral under the terms of Rev. Proc. 2013-34, sec. 4.03(2)(e). However,

this Court treats the lack of a significant benefit as a factor favoring relief. See Boyle v. Commissioner, T.C. Memo. 2016-87, at *16; Wang v. Commissioner, T.C. Memo. 2014-206, at *40.

Respondent concedes that petitioner did not receive any significant benefit from the underpayment of tax. Accordingly, this factor weighs in favor of relief.

### 6. Compliance With Income Tax Laws

This factor weighs in favor of relief if the requesting spouse is in compliance with the income tax laws for taxable years after being divorced from the nonrequesting spouse. If the requesting spouse is not in compliance, then this factor will weigh against relief. Rev. Proc. 2013-34, sec. 4.03(2)(f)(i), 2013-43 I.R.B. at 402. Respondent concedes that petitioner has complied with the income tax laws for the years following petitioner and intervenor's divorce. This factor weighs in favor of relief.

### 7. Health

This factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health when the tax return in issue was filed, when the request for relief was made, or at the time of trial. Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403; see also Pullins v. Commissioner, 136 T.C. at 454. If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral. Rev.

Proc. 2013-34, sec. 4.03(2)(g). The record does not establish that petitioner was in poor physical or mental health at any time. Accordingly, this factor is neutral.

8.      Conclusion

After evaluating the factors, we find that three of the seven factors weigh in favor of relief, one factor weighs against relief, and the remaining factors are neutral. In section 6015(f) cases, however, we do not simply count factors. We evaluate all of the relevant facts and circumstances to reach a conclusion. See Pullins v. Commissioner, 136 T.C. at 448; Rev. Proc. 2013-34, secs. 3.05, 4.03(2), 2013-43 I.R.B. at 398, 400.

In evaluating the relevant factors we conclude that the knowledge factor weighs too heavily against relief for petitioner. The 2010 tax liability attributable to intervenor partially arose from defaulted TSP loans to which petitioner had consented. She knew the liability would not be paid when she signed the return. Given these facts, we find that it would not be inequitable to hold her responsible for the underpayment for 2010.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.